# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

| | |
|---|---|
| BENEFICIAL ELECTRIC, LLC, <br><br> Plaintiff, <br><br> v. <br><br> GGA CONSTRUCTION, LLC; GRAYSON, GRAYSON, & ASSOCIATES; LANG DEVELOPMENT GROUP, LLC; 96 MAIN STREET ASSOCIATED, LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **C.A. No. N23L-11-036 CEB** |

Submitted: September 24, 2025
Decided: October 13, 2025

## MEMORANDUM OPINION

*Upon Consideration of Defendants' Motion to Dismiss*;
**GRANTED** in part and **DENIED** in part.

William D. Sullivan, Esq. and Elihu E. Allinson, III, Esq., SULLIVAN HAZELTINE ALLINSON, LLC, Wilmington, Delaware. *Attorneys for Plaintiff Beneficial Electric, LLC*.

Victoria K. Petrone, Esq., BROCKSTEDT MANDALAS FEDERICO, LLC, Wilmington, Delaware. *Attorney for Defendant GGA Construction*.

**BUTLER, R.J.**

## INTRODUCTION

This dispute concerns a construction project in Newark, Delaware called the Green Mansion Project. The project included a Hyatt Hotel and the Green Mansion Apartment Building, dedicated to student housing. The Complaint explains that the general contractor was GGA Construction, LLC ("GGA"). GGA hired Beneficial Electric, LLC ("Beneficial") as the electrical subcontractor – called the "trade contractor" in the Subcontract Agreement.[1] The original amount of the subcontract was $2,248,215 and it was executed in February 2022.[2] After Beneficial began work under the subcontract, the parties agreed to expand the scope of work.[3] The subcontract amount increased to $2,767,083.78 as reflected in change orders prepared by GGA.[4]

## FACTS

On July 24, 2023, GGA terminated the Subcontract Agreement (the "Termination Letter").[5] The Termination Letter stated that Beneficial had made little to no progress on a list of assignments from GGA for over sixty days and GGA was

---

[1] Compl. at ¶6.
[2] *Id.*
[3] *Id.* at ¶11.
[4] *Id.*
[5] *Id.* at ¶12.

therefore exercising its right to terminate the Agreement.[6] GGA subsequently hired another subcontractor to complete the work.

The Complaint asserts that GGA wrongfully terminated the Subcontract Agreement without providing proper written notice and that Beneficial is entitled to receive payment of the fair and reasonable value of work performed up to the date of termination.[7] In addition to contract damages, the Complaint seeks a mechanic's lien on the property to secure payment.

By the terms of the Subcontract Agreement, GGA paid vendors who supplied material and equipment for the project. In addition, it paid the "covering" subcontractor to finish the job. When all told, Beneficial believes it is still owed $592,425.[8]

## ANALYSIS

### 1. Provisions of the Subcontract Agreement

A few terms of the Subcontract Agreement concern themselves with resolution of disputes such as the one before us. First, Article 12.2 says that all disputes will be subject to mediation "as a condition precedent to further

---

[6] *Id.*

[7] *Id.* at ¶¶ 13-19.

[8] *Id.* There are five counts in the complaint: a mechanic's lien, breach of contract, quantum meruit/quantum valebant, unjust enrichment, and a violation of the Building Construction Payments Act.

proceedings."[9]  Second, when claims are not resolved at mediation, they "shall be subject to arbitration or litigation at the sole discretion of the Construction Manager."[10]  Although the Construction Manager controls whether the dispute will be resolved by either arbitration or litigation, the Agreement is silent as to when the Construction Manager must make that choice.  On the other hand, if Beneficial wishes to invoke the dispute resolution provisions of the contract, it "must commence mediation or any other proceeding within one (1) year after substantial performance of this Agreement."[11]

Beneficial filed its Complaint in this Court in November, 2023, four months after being removed from the job by GGA.  After the Complaint was filed, the parties jointly stipulated to conduct mediation in accordance with the Subcontract Agreement.  The Court ordered a stay of the proceedings in February 2024 while mediation was conducted.[12]

Due to scheduling conflicts among the parties, mediation did not begin until September 2024.  Another five months later, the Court received notice from GGA that mediation had been unsuccessful. GGA filed its Motion to Dismiss shortly thereafter.[13]

---

[9] Compl. Ex. A, Article 12.2.
[10] Compl. Ex. A, Article 12.3.  The "Construction Manager" is GGA.
[11] Compl. Ex. A, Article 12.8.
[12] Stipulation & Ord. Stay Procs. in Favor of Mediation, D.I. 11.
[13] Defs.' Mot. to Dismiss, D.I. 34 [hereinafter MTD].  The Court received a letter from Plaintiff on May 30, 2025 that "mediation and follow-up exchange . . . has not resolved the case."

## 2. Arbitration

GGA argues that the Superior Court lacks subject matter jurisdiction as these claims are subject to arbitration under the Subcontract Agreement.[14]

It is not disputed that the parties engaged in mediation, a necessary predicate to any next step in dispute resolution as required by Article 12.2 of the Agreement. And Beneficial does not dispute that it received an email on January 12, 2024 when the parties were still planning mediation. In the email, GGA's counsel states that "the parties' contract calls for arbitration. The owner entities will stipulate to participate in and be bound by arbitration."[15]

Beneficial argues that this email is not a sufficient demand for arbitration.[16] It views the email as a mere proposal concerning the next phase of dispute resolution, and not a demand under the Subcontract Agreement. Beneficial also argues that the term "owner entities" is not a defined term in the contract and would not include GGA, which is defined as the Construction Manager in the Agreement.[17]

Beneficial's arguments are not convincing. The Agreement does not prescribe any particular manner or language by which GGA must make its demand. In fact, the Agreement gives GGA unfettered discretion to decide in what forum to resolve

---

[14] MTD at ¶¶1-3.
[15] MTD, Ex. A.
[16] Pl.'s Obj. to Def. Mot. to Dismiss, at ¶¶6-7.
[17] *Id.*

the dispute. Counsel's email references the parties' agreement and expressly agrees to "participate in and be bound by arbitration."[18] Nor is the Court persuaded that the reference to the "owner entities" as the party seeking arbitration and not GGA dispositive. While using the general contractor's name and not the owner's would have been better form, it is altogether likely that by the time the demand for arbitration was made, the building had been completed and turned over to the owner, making the owner the party ultimately liable for any monies owed to Beneficial. If Beneficial was confused by the change in identity of the opposing party, it never sought clarification or expressed any doubt that the party withholding funds was the one that wanted arbitration.

Beneficial's second argument is that GGA disavowed arbitration and chose litigation when it signed the joint stipulation to stay proceedings in this Court pending mediation ("Stipulated"). The Stipulation states that the parties agree to mediation "before proceeding with litigation" and so Beneficial argues that GGA is bound to engage in litigation, not arbitration, now that mediation has failed.[19]

The Stipulation to stay proceedings was a communication between the parties and the Court, not a contract provision. Terms of a Stipulated Order may be enforced as Orders of the Court, but they are not the stuff of legal draftsmen working out the

---

[18] MTD, Ex. A.
[19] *Id.* at ¶8.

6

terms of the subcontract. The term "litigation" as used in the Stipulation is easily read to mean either arbitration or litigation. The Court will not lightly presume that GGA, holding the absolute discretion to decide whether to choose arbitration or litigation in its contract with Beneficial, would waive that right in a stipulation drafted to stay the entire matter until mediation is completed.

Further, even if the January 2024 email from GGA's counsel is not a demand for arbitration, GGA has made its demand for arbitration quite clear in its pleadings before the Court. The arbitration clause grants GGA complete discretion to choose arbitration with no limitation as to when it may make that choice. Beneficial initiated a proceeding within one year of the Termination Letter, the parties engaged in mediation, mediation failed, and GGA now seeks to exercise the right expressly granted by the Agreement to arbitrate "[c]laims not resolved by mediation." So even if the January 2024 email was not a demand for arbitration, GGA has made demand now and the Court is not in a position to deny GGA a right that Beneficial gave GGA when it signed the contract.

### 3. The Mechanic's Lien

GGA also seeks to dismiss the mechanic's lien count of the Complaint, arguing that Plaintiff failed to "commence arbitration proceedings within one year

7

of the substantial completion date" as required by the parties' contract. As a result, says GGA, Beneficial is now time-barred from pursuing the mechanic's lien.[20]

But that is not what the Subcontract Agreement says. The Subcontract Agreement says that Beneficial "must commence mediation *or any other proceedings* within one (1) year after substantial performance of this Agreement. . . ."[21]

The parties agree that the date of "substantial performance" for Beneficial was July 31, 2023, when GGA terminated the contract.[22] Beneficial initiated a lawsuit in this Court in November 2023. A lawsuit is "any other proceeding" by which Beneficial may seek damages as a result of the contract termination. November comes four months after July. That is less than one year. Beneficial complied with Article 12.8 of the Agreement.

## CONCLUSION

Because the Court rules that GGA has properly invoked the arbitration provision of the Contract, it **GRANTS** GGA's Motion to Dismiss Counts II-V of the Complaint.

GGA's Motion to Dismiss Count I of the Complaint is **DENIED**. Following arbitration, the Court will hear further from the parties concerning the Complaint for

---

[20] MTD at ¶4.
[21] Compl., Ex. A (emphasis added).
[22] Defs.' Reply in Support of Mot. to Dismiss, D.I. 37, at ¶2.

a mechanic's lien.  Until the arbitration matter is concluded, further litigation over the mechanic's lien action is **STAYED**.


    **IT IS SO ORDERED.**


<u>**/s/ Charles E. Butler**</u>
Charles E. Butler, Resident Judge